[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12597
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cv-01904-GAP-DAB

DAVID MAUS,
MARK ORNSTEIN,

Plaintiffs-Counter-
Defendants-Appellees,

versus

JOHN PATRICK ENNIS,

Defendant-Counter Claimant-
Third Party Plaintiff - Appellant,

TOM BUCK, et al.,

Third Party Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 20, 2013)

Before HULL, JORDAN and FAY, Circuit Judges.

PER CURIAM:

John Ennis, proceeding *pro se*, appeals the district court's grant, in part, of a default judgment in favor of David Maus and Mark Ornstein (collectively, the "plaintiffs") as a sanction against Ennis, the defendant, in their action filed pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d) and Cyberpiracy Protection for Individuals ("CPI"), 15 U.S.C. § 8131(2). On appeal, Ennis argues that the district court (1) erroneously sanctioned him with a default judgment without providing him with at least two opportunities to comply with a discovery order; (2) showed biased against him by refusing to use his religious names; and (3) erroneously entered the default judgment despite evidence that he did not violate the ACPA. For the reasons set forth below, we affirm the district court's partial grant of a default judgment against Ennis.

## I.

On December 21, 2010, Maus initiated a civil action against Ennis, and Ornstein later joined as a plaintiff. Subsequently, Ennis, proceeding *pro se*, filed a motion, requesting that the court require all parties to address him by his religious names. The district court denied the motion.

Ennis then filed a motion for the recusal of District Court Judge Gregory A. Presnell pursuant to 28 U.S.C. § 455(a) and (b), alleging that Judge Presnell had

shown "prejudice and bigotry" against him and all of the members of the "Temple of 'Hayah'" ("TOH") by refusing to recognize Ennis's religious names.  The district court denied Ennis's motion for recusal, finding that no reasonable person could conclude that the court's references to his legal name were evidence of bias, prejudice, or a lack of impartiality.  Further, the court noted that "Ennis ha[d] adopted a posture of rudeness and disrespect toward the other parties," and it warned that, if Ennis's disrespectful behavior continued, the court could impose sanctions.  Ennis filed two additional recusal motions, both of which were denied.

Subsequently, the plaintiffs filed a motion for sanctions, alleging that Ennis had sent them harassing e-mails, published a defamatory internet article, and refused to communicate with their counsel.  Additionally, on June 13, 2011, Maus and Ornstein filed a second amended complaint, alleging that, in November 2010, Ennis "came under the false impression that he or his company had been defamed on the David Maus VW North Google Maps website."  As a result, Ennis became angry and sent several threatening e-mails to Maus's counsel.  The complaint alleged that, in the e-mails, Ennis claimed that Adoni International Services, Inc. ("AIS") had acquired multiple domain names that included the names Maus and Ornstein.  Further, Ennis has several aliases such as "God" and "Rabbi Sollog Adoni," and he purchased the domain names either anonymously or through an

3

alias or fictitious business entity.  Further, to the extent that the domain names were registered by a business entity, it was merely Ennis's "shell or alter-ego."

The complaint further alleged that some of the domain names included the names of car dealerships in which Maus has a legal interest.  Further, Maus's name is "distinctive and famous" due to his ownership interest in numerous car dealerships throughout Florida, where he regularly appears in television advertisements for his dealerships.  Thus, his name and likeness are representative of, and associated with, those dealerships.  Finally, Ennis does not intend to use the domain names for any legitimate purpose, and he demanded a financial settlement from Maus in exchange for the domains.

Based on these factual allegations, the plaintiffs alleged: (1) violations of the ACPA, 15 U.S.C. § 1125(d) ("Count One"); (2) invasion of privacy ("Count Three"); and (3) violations of the CPI, 15 U.S.C. § 8131 ("Count Four").  In Count Two, the plaintiffs requested injunctive relief to prohibit Ennis's continued use of the domain names.  In response, Ennis filed an answer and counterclaim.

After the plaintiffs submitted their amended complaint, the magistrate judge issued a report and recommendation that their motion for sanctions be granted, in part.  Specifically, to the extent that the motion sought an order requiring Ennis to litigate in good faith, the request was unnecessary.  As to the part of the motion to be granted, the magistrate found that Ennis had posted an internet article, alleging

4

that Ornstein was a "racist and a bigot who should be disbarred."  Further, Ennis's conduct was "reprehensible," and he had "acted intentionally, in bad faith, and for oppressive reasons."  Because the court had previously warned Ennis against "rudeness and disrespect" toward the court and other parties, sanctions were warranted.  Thus, the magistrate recommended that the court admonish Ennis and advise him that "any future rudeness or disrespect to counsel or the [c]ourt" would result in more severe sanctions, which could include "monetary sanctions, the striking of his pleadings[,] and the entry of a default judgment against him."  The district court adopted the magistrate's report and recommendation.

On October 3, 2011, after the plaintiffs filed a motion to compel Ennis to submit discovery responses, the district court ordered Ennis to produce all the requested documents and sworn answers to the interrogatories within ten days. The court warned that Ennis's "failure to timely and fully comply with the terms of this [o]rder may result in the imposition of sanctions, which may include the imposition of monetary sanctions, the striking of pleadings or defenses or other sanctions, as appropriate."

On October 17, 2011, the plaintiffs filed a motion for sanctions, including the entry of a default judgment and dismissal of Ennis's counterclaim, alleging that he had submitted incomplete discovery responses.  In response, Ennis alleged that

5

much of the requested information was "privileged" due to his religious activity and his involvement with national and international security matters.

In December 2011, the magistrate judge issued a report and recommendation that the district court grant the plaintiffs' motion for sanctions. The magistrate found that Ennis failed to comply with the court's discovery order. Further, by failing to file timely objections to the discovery requests, Ennis had waived any objections based on privilege. Moreover, Ennis failed to establish any recognizable privilege, and he made no showing that the requested information related to any national or international security matters. Ennis appeared to believe that he was not required to comply with federal rules or court orders, as his responses to the discovery requests were "evasive and willfully incomplete," and as such, sanctions were "clearly warranted." As to the severity of the sanction, the magistrate noted that, if Ennis's failure to comply with the discovery order had been his first or only misconduct, lesser sanctions may have been appropriate. However, based on Ennis's behavior, the court was convinced that no lesser sanction would be sufficient to compel Ennis's cooperation. Specifically, Ennis had "persistently acted with rudeness and disrespect. . . and ha[d] been admonished for it, repeatedly."

Over Ennis's objections, on December 16, 2011, the district court adopted the magistrate's report and recommendation, and granted the plaintiffs' motion for

6

sanctions.  The court ordered that Ennis's answer to the second amended complaint and his counterclaim be stricken, and it entered a default judgment against him. Further, the court instructed the plaintiffs that they must file a motion for entry of a default judgment.  On January 6, 2012, the plaintiffs filed such a motion, requesting, among other things, reasonable attorney's fees and statutory damages.

Ennis raised numerous objections to the plaintiffs' motion for a default judgment, including that he did not register the domains, and that they were "cyber grip[e] sites," which qualify as "fair use" and are protected as free speech.

After an evidentiary hearing, the magistrate issued a report and recommendation that the district court grant, in part, and deny, in part, the plaintiffs' motion for entry of default judgment.  By operation of the default, the magistrate took the well pleaded allegations contained in the second amended complaint as true.  As to Count One, which alleged violations of the ACPA, there was "more than sufficient evidence of bad faith."  However, while the complaint established that the name "David Maus" was entitled to trademark protection, there was no showing that the name "Mark Ornstein" was entitled to such protection.

Additionally, the magistrate found that, as to Maus's ACPA claim, the record showed that Ennis, with a bad faith intent to profit, registered and used domain names that incorporated Maus's trademark without any reasonable grounds to believe that the use was "fair use or lawful."  Further, the complaint alleged, and

7

the record reflects, that Ennis controls AIS, the entity that he claims registered the domain names. The complaint also alleged that Ennis had no legitimate purpose for registering the domain names and that he threatened and demanded money from Maus. The magistrate noted that Ennis's assertion that he was not involved in the registration of the domain names was foreclosed by the default. Regardless, substantial evidence at the evidentiary hearing also indicated that Ennis used a fictitious name to register the domains.

The magistrate found, however, that the complaint was insufficient to entitle the plaintiffs to a default judgment regarding their request for injunctive relief (Count Two) and their invasion-of-privacy claim (Count Three). As to Count Four, the complaint sufficiently pled a CPI violation as to both plaintiffs because it alleged that Ennis registered the domain names with an intent to profit financially. For these reasons, the magistrate recommended that the district court grant the plaintiffs' motion for entry of a default judgment as to Maus's ACPA claim and the CPI claim, and deny it as to the remaining claims.

Over Ennis's objections, the district court adopted the magistrate's report and recommendation. The court rejected Ennis's argument that he should be allowed another opportunity to comply with court orders before facing sanctions. Specifically, Ennis received "numerous warnings" to cease his misbehavior and of the consequences of failing to do so, and he ignored those warnings. Thus, the

8

court granted, in part, and denied, in part, the plaintiffs' motion for a default judgment, consistent with the magistrate's recommendation. Accordingly, the court entered a default judgment against Ennis as to Count One (Maus only) and Count Four (both plaintiffs), dismissed without prejudice Count One (Ornstein only) and Count Three, and dismissed Count Two.

## II.

We review the district court's imposition of sanctions for abuse of discretion. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. *Martin v. Automobili Lamborghini Exclusive*, Inc., 307 F.3d 1332, 1336 (11th Cir. 2002). A district court may impose sanctions for litigation misconduct under its inherent power. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Further, Fed.R.Civ.P. 16(f) provides for sanctions as follows:

> (1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>
>> (A) fails to appear at a scheduling or other pretrial conference;
>>
>> (B) is substantially unprepared to participate--or does not participate in good faith--in the conference; or
>>
>> (C) fails to obey a scheduling or other pretrial order.

9

(2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses--including attorney's fees--incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f).  Sanctions under Rule 16(f) are "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985).  Under Rule 37, the district court may, among other sanctions, render a default judgment against the disobedient party.  Fed.R.Civ.P. 37(b)(2)(A)(vi).  However, in order to impose the severe sanction of a default judgment, the district court must make a finding of willfulness or bad faith failure to comply with a discovery order.  *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993).  Violations of a court order "caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment." *See id.*  Moreover, a default judgment is appropriate only as a "last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Id.*

Finally, while the pleadings of *pro se* litigants are held to a less stringent standard than pleadings drafted by attorneys, *Tannenbaum*, 148 F.3d at 1263, *pro se* litigants still must comply with procedural rules, *Moton v. Cowart*, 631 F.3d

10

1337, 1340 n.2 (11th Cir. 2011).  Specifically, we have held that *pro se* litigants are subject to the Federal Rules of Civil Procedure, including sanctions for misconduct and for failure to comply with court orders.  *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir.1989).

As a preliminary matter, contrary to the plaintiffs' argument, Ennis's appeal is not untimely as to the district court's initial December 2011 order imposing sanctions.  *See Barfield v. Brierton*, 883 F.2d 923, 930-31 (11th Cir. 1989) (holding that, when reviewing a final judgment, we generally also have jurisdiction to review "all prior non-final orders and rulings which produced the judgment").  Here, the district court's December 2011 order was a non-final order because it instructed the plaintiffs to file a motion for entry of a default judgment, which the court later granted, in part, in its final order on April 13, 2012.  On May 9, 2012, Ennis filed a timely appeal of the court's final order, and as such, we also have jurisdiction over the prior order.  Fed.R.App.P. 4(a)(1)(A).

The district court did not abuse its discretion when it imposed a default judgment against Ennis as a sanction for his disrespectful conduct and his refusal to participate in discovery.  On appeal, Ennis fails to address the district court's finding that he had exhibited rude and disrespectful behavior throughout the litigation.  Thus, it appears that Ennis has abandoned any challenge to the district court's factual finding that his behavior was rude and disrespectful.  *See Timson v.*

11

*Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that issues not briefed on appeal by a *pro se* litigant are deemed abandoned).  Regardless, the district court's finding regarding Ennis's misbehavior was supported by the record.  Specifically, Ennis accused the district court of "ignorance" and "incompetency," and he sent numerous harassing e-mails to the plaintiffs, accusing Ornstein of being a "bigot" and a "racist."  As such, the district court did not abuse its discretion for entering a default judgment, in part, as a sanction for Ennis's disrespectful behavior.  *See Eagle Hosp. Physicians, LLC*, 561 F.3d at 1306.

Further, as to Ennis's failure to comply with the court's discovery order, he repeatedly asserts that a *pro se* litigant must fail to comply with at least two discovery orders to justify a default judgment.  However, he does not provide, and research does not reveal, any binding legal authority in support of his contention.  To the contrary, *pro se* litigants are required to comply with the district court's procedural rules and may be subjected to sanctions for failing to do so.  *See Moton*, 631 F.3d at 1340 n.2; *Moon*, 863 F.2d at 837.  Here, before imposing the default judgment, the district court complied with its obligation to make findings that Ennis had acted willfully and with bad faith and that a less severe sanction would have been insufficient.  *Malautea*, 987 F.2d at 1542.  Specifically, the court noted that, if Ennis's failure to comply with the discovery order had been his only misconduct, lesser sanctions may have been appropriate.  The court found,

12

however, that Ennis had exhibited a pattern of conduct that showed disrespect for the court's rules and a lesser sanction would have been insufficient to ensure his cooperation. Nothing in the record suggests that a lesser sanction would have been adequate, as Ennis had already been admonished for his misconduct, and the court repeatedly warned him that further misconduct could result in sanctions, including a default judgment.

Additionally, the court found that Ennis's discovery responses were "evasive and willfully incomplete," and on appeal, he does not allege that his incomplete answers were the result of negligence or a misunderstanding. *Id.* Instead, he suggests that he was not required to comply with the court's discovery order because the requested information and documents were "privileged." However, he fails to address the district court's finding that he did not file any timely objections to the discovery requests based on a recognized privilege. In sum, Ennis has failed to establish that the district court abused its discretion in determining that a default judgment was appropriate based on his disrespectful behavior and his refusal to participate in discovery.

### III.

We review the district court's denial of a recusal motion for abuse of discretion. *Murray v. Scott*, 253 F.3d 1308, 1310 (11th Cir. 2001).

Under § 455(a), a federal judge is required to recuse himself whenever his

"impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Recusal is only appropriate where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Amedeo*, 487 F.3d 823, 828 (11th Cir. 2007). Under § 455(b), a judge should also disqualify himself where he has a "personal bias or prejudice concerning a party, or a personal knowledge of disputed evidentiary facts." 28 U.S.C. § 455(b)(1). However, judicial rulings unaccompanied by allegations of bias based on an extra-judicial source "almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994).

The district court did not abuse its discretion in denying Ennis's recusal motions. On appeal, Ennis identifies no evidence to suggest that the Judge Presnell's impartiality could reasonably be questioned by an objective observer or that he had a personal bias against Ennis. *See* 28 U.S.C. § 455(a) and (b). Instead, Ennis's sole complaint is that the court used his "birth name" or legal name, rather than his preferred religious names. However, the court's use of Ennis's legal name does not suggest that Judge Presnell lacked impartiality or that Judge Presnell had a personal bias against Ennis based on an extrajudicial source. *Amedeo*, 487 F.3d

14

at 828; *Liteky*, 510 U.S. at 555, 114 S.Ct. at 1157.  Thus, the district court properly exercised its discretion in denying Ennis's recusal motions.


IV.

After a default is entered against a defendant, he is deemed to have admitted the plaintiffs' well-pleaded factual allegations, and on appeal, he is barred from contesting those facts.  *Eagle Hosp. Physicians,* 561 F.3d at 1307.  Thus, "[a] default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations." *Id.*  A defendant, on appeal, may challenge the sufficiency of the complaint, but not the sufficiency of the proof.  *Id.*  We review the sufficiency of a complaint *de novo*.  *Id.* at 1303.

We have explained that,

Cybersquatting is a form of trademark misuse. This activity is defined to be the conduct of one who reserves with a network information center a domain name consisting of the mark or name of a company for the purpose of relinquishing the right to the domain name back to the legitimate owner for a price.

*Id.* at 1307.  Under the ACPA, a person commits cybersquatting, if, without regard to the goods or services of the parties, that person

(i)    has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii)    registers, traffics in, or uses a domain name that—

15

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a [protected] trademark, word, or name. . .

15 U.S.C. § 1125(d).  Similarly, under the CPI statute, a person is liable who registers a domain name that consists of another person's name, without the person's consent, with the specific intent to profit by selling the domain name to that person or a third party.  15 U.S.C. § 8131.

As an initial matter, to the extent that the parties dispute the evidence that was presented at the evidentiary hearing, we cannot review those arguments because Ennis has not provided a transcript of the hearing on appeal.  *See Pensacola Motor Sales Inc. v. Eastern Shore Toyota, LLC,* 684 F.3d 1211, 1224 (11th Cir. 2012) (explaining that, under the "absence equals affirmance" rule, "the burden is on the appellant to ensure the record on appeal is complete, and where a failure to discharge that burden prevents us from reviewing the district court's decision we ordinarily will affirm the judgment").  Thus, to the extent that the outcome of this appeal depends on a review of the testimony and evidence that was presented at the evidentiary hearing, we would affirm because the record on appeal is incomplete.  *See id.*

16

Regardless, because the district court entered a default judgment against Ennis, our review is limited to whether the judgment is supported by the well-pleaded facts in the complaint. *See Eagle Hosp. Physicians,* 561 F.3d at 1307. On appeal, Ennis asserts that his primary argument is that "evidence" showed that AIS was the legal entity that registered the domain names, and as such, he cannot personally be held liable. However, Ennis is precluded from challenging the sufficiency of the proof on appeal, and instead, he is limited to challenging the sufficiency of the complaint. *See id.* Here, the complaint sufficiently alleged that Ennis registered the domain names, either anonymously or through an alias or a fictitious business entity. Further, the complaint acknowledged Ennis's allegation that AIS had registered the domain names, but it alleged that AIS acted merely as his "shell" or "alter-ego." The magistrate correctly found that the complaint alleged that Ennis controlled AIS, and as such, his argument that he was not involved in registering the domain names was foreclosed by the default. *See id.* Further, on appeal, Ennis asserts a single, conclusory allegation that Maus does not own a trademark in the names of his businesses. However, this allegation does not appear to challenge the sufficiency of the complaint, and as discussed above, Ennis is precluded from challenging the sufficiency of the proof. *See id.*

Finally, because the well-pleaded allegations in the complaint are taken as true, Ennis is also precluded from asserting that any use of the domain names was

17

constitutionally protected as fair use or free speech. *See id*. Here, the complaint sufficiently alleged that Ennis had no legitimate purpose for registering the domain names, and that he demanded money from Maus in exchange for them.

For the foregoing reasons, we affirm the default judgment against Ennis.

**AFFIRMED.**

18