DARRIN P. GAYLES, UNITED STATES DISTRICT JUDGE
THIS CAUSE comes before the Court upon Defendant The Insurance Company of the State of Pennsylvania's ("Defendant") Motion for Final Summary Judgment (the "Motion"). [ECF No. 45]. The Court has considered the Motion, the record, argument of counsel at the hearing on the Motion, and is otherwise fully advised. For the reasons set forth below, the Motion is GRANTED.
I. BACKGROUND
A. The Underlying Action
On July 26, 2013, Plaintiff Jane Doe ("Plaintiff") filed an action (the "Underlying Action") against Cayman Style Ocean Adventures, Inc. ("CSOA") and its employee Shawn Mourao ("Mourao"). On March 3, 2014, Plaintiff filed her Second Amended Complaint in the Underlying Action bringing claims for negligence, sexual assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress (the "Underlying Complaint"). [ECF No. 29]. Aside from the direct negligence claim against CSOA, Plaintiff's claims were brought against Mourao individually and against CSOA based on vicarious liability.
As set forth in the Underlying Complaint, on July 22, 2012, Plaintiff embarked on a seven-day Caribbean cruise on the Carnival Legend. For the cruise's stop in Grand Cayman, Plaintiff purchased a three-hour beach and party boat snorkeling excursion operated by CSOA. On July *1361 27, 2012, Plaintiff went ashore to participate in the excursion. Upon arriving at the CSOA excursion vessel, Plaintiff was introduced to Mourao who identified himself as the captain. When the CSOA excursion vessel returned to the harbor, Plaintiff disembarked and remarked that she needed to use the bathroom before returning to the Carnival Legend. Mourao offered to direct Plaintiff to the nearest bathroom. Rather than assist Plaintiff, Mourao led her to a nearby shopping center where he detained her against her will in a small room and sexually assaulted her.
CSOA and Mourao failed to appear in or defend the Underlying Action. After clerk's defaults were entered against both, Plaintiff filed a Motion for Entry of Final Default Judgment [ECF No. 42-4]. The court entered a Final Default Judgment as to Liability [ECF No. 42-6], but reserved judgment as to damages pending an evidentiary hearing. After the evidentiary hearing, the court entered a Final Default Judgment in the amount of $ 1,988,460.54 against CSOA and Mourao jointly and severally. [ECF No. 42-7].
B. The Policies
At the time of the allegations in the Underlying Complaint, CSOA and Mourao were insured by Defendant under a Foreign Commercial General Liability Policy [ECF No. 1-1]. A second policy, the Foreign Commercial Package Policy, which is materially identical, was also issued to "Cayman Style Ocean Adventures, Ltd." [ECF No. 1-2] (collectively the "Policies"). The relevant provisions of the Policies provide:
SECTION I - COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
Subject to any deductibles, limitations, terms, conditions, sublimits and exclusions contained in the Declarations, together with any Schedules applicable to this Foreign Commercial General Liability Coverage Part, we agree to provide coverage to you to the extent herein provided.
1. Insuring Agreement
a. We will pay those sums that an insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies....
b. This Foreign Commercial General Liability Coverage Part applies to bodily injury and property damage only if:
(1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory.
* * *
SECTION V - DEFINITIONS
* * *
15. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
* * *
2. Exclusions
This insurance does not apply to:
a. Expected or Intended Injury
Bodily injury or property damage expected or intended from the standpoint of the insured.
* * *
ABUSE OR MOLESTATION EXCLUSION
* * *
The following exclusion is added to Paragraph 2., Exclusions of Section I - *1362 Coverage A - Bodily Injury And Property Damage Liability ...
This insurance does not apply to bodily injury ... arising out of:
1. The actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured, or
2. The negligent:
a. Employment;
b. Investigation;
c. Supervision;
d. Reporting to the property authorities, or failure to so report; or
e. Retention
of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by Paragraph 1., above.
COVERAGE C MEDICAL PAYMENTS
1. Insuring Agreement
a. We will pay medical expenses as described below for bodily injury caused by an accident:
(1) On premises you own or rent;
(2) On ways next to premises you own or rent; or
(3) Because of your operations; provided that:
(1) The accident takes place in the coverage territory and during the Policy Term;
(2) The expenses are incurred and reported to us within one year of the date of the accident; and
(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.
* * *
g. Coverage A Exclusions
Excluded under Coverage A.
[See ECF No. 43-3, 43-3]. Based on its interpretation of the Policies, Defendant denied coverage in the Underlying Action.
C. The Current Action
Plaintiff brought this lawsuit for breach of contract and declaratory relief seeking to recover the full amount of the Final Default judgment in the Underlying Lawsuit. In her First Amended Complaint [ECF No. 29] and in the pleadings presently before this Court, Plaintiff argues that Defendant must indemnify its insureds because the Final Default Judgment falls within the terms of the Policies and no exclusions apply. Defendant has moved for summary judgment arguing that there is no coverage for the Final Default Judgment under the Policies because Plaintiff's losses are excluded by the Abuse and Molestation Exclusion endorsement and under the plain language of the insuring agreements. Defendant has also filed a counterclaim, seeking a declaratory judgment that neither policy applies.
II. LEGAL STANDARD
Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56 [a] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who *1363 fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc. , 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e)"requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex , 477 U.S. at 324, 106 S.Ct. 2548. Thus, the nonmoving party "may not rest upon the mere allegations or denials of [her] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Scott v. Harris , 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).
III. ANALYSIS
A. General Principles
Under Florida law, "interpretation of an insurance policy is a question of law to be decided by the court." Gulf Tampa Drydock Co. v. Great Atl. Ins. Co. , 757 F.2d 1172, 1174 (11th Cir. 1985). "[I]nsurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." U.S. Fire Ins. Co. v. J.S.U.B., Inc. , 979 So.2d 871, 877 (Fla. 2007).[1] "[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co. , 913 So.2d 528, 532 (Fla. 2005) (citation and internal quotation marks omitted). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." Garcia v. Fed. Ins. Co. , 969 So.2d 288, 291 (Fla. 2007) (quoting *1364 Auto-Owners Ins. Co. v. Anderson , 756 So.2d 29, 34 (Fla. 2000) ). "Ambiguities in insurance contracts are interpreted against the insurer and in favor of the insured." Id. (citing Swire Pac. Holdings, Inc. v. Zurich Ins. Co. , 845 So.2d 161, 165 (Fla. 2003) ). "A provision is not ambiguous simply because it is complex or requires analysis." Id. (citing Swire Pac. Holdings , 845 So.2d at 165 ).
If there is a dispute over coverage and exclusions, the Court employs a burden-shifting framework. See E.S.Y., Inc. v. Scottsdale Ins. Co. , 139 F.Supp.3d 1341, 1351 (S.D. Fla. 2015). "A person seeking to recover on an insurance policy has the burden of proving a loss from causes within the terms of the policy[,] and if such proof of loss is made within the contract of insurance, the burden is on the insurer to establish that the loss arose from a cause that is excepted from the policy." Id. (quoting U.S. Liab. Ins. Co. v. Bove , 347 So.2d 678, 680 (Fla. 3d Dist. Ct. App. 1977) ). If the insurer is able to establish that an exclusion applies, the burden shifts to the insured to prove an exception to the exclusion. Id.
The duty to indemnify is dependent upon the "actual facts" of the underlying action, which are generally developed through entry of a final judgment, settlement, or other final resolution of the underlying claim. See Stephens v. Mid-Continent Cas. Co. , 749 F.3d 1318, 1324 (11th Cir. 2014) ; J.B.D. Const., Inc. v. Mid-Continent Cas. Co. , 571 F. App'x 918, 927 (11th Cir. 2014) (per curiam). The well-pleaded allegations in the Underlying Complaint were deemed admitted through entry of the default and Final Default Judgment in the Underlying Litigation and now constitute the "actual facts" upon which to determine whether Defendant must indemnify CSOA and Mourao. See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc. , 561 F.3d 1298, 1307 (11th Cir. 2009) (holding that "defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); Buchanan v. Bowman , 820 F.2d 359, 361 (11th Cir. 1987). The only issue in this action is whether Defendant has a duty to indemnify based on these facts deemed admitted.
B. Interpretation of the Policy Language
Defendant raises two primary arguments for why Plaintiff's injuries are not covered: (1) that the assault was not an "accident" or "occurrence" covered under the Policy's terms, and (2) that the plain language of the insurance policy excludes Plaintiff's injuries, namely that Mourao's conduct is excluded from coverage under the abuse or molestation endorsement. Each is discussed in turn.
1. Whether The Judgment Falls Under The Policies' Insuring Agreement
At issue is whether the assault is covered under the policy because it constituted a "bodily injury ... caused by an occurrence." The insurance policy defines "occurrence" as an "accident."[2] The term "accident" is not defined. Defendant argues that the assault was not an occurrence because CSOA had actual knowledge *1365 of prior abuse by Mourao, and thus, it was an expected injury. Defendant points out that Plaintiff's Underlying Complaint repeatedly states that Defendant knew that Mourao was a liability. Plaintiff counters that her assault was an occurrence because the allegations in her Underlying Complaint also stated that CSOA "should have known" about Mourao's incidents. She contends that because CSOA "should have known" (but did not know) certain facts about Mourao, CSOA could not have expected or intended that Plaintiff would suffer bodily injury at his hands. Thus the only question is whether the assault was expected from CSOA's viewpoint. If it was, the assault is not covered under the policy.
Florida precedent defines "accident" as an "accidental event [causing] injuries or damage" that is "neither expected nor intended from the standpoint of the insured." Singer v. Colony Ins. Co. , 147 F.Supp.3d 1369, 1376 (S.D. Fla. 2015) (noting that where the Complaint did not allege the insured "expected or intended the harassment," Plaintiff's bodily injury constituted an occurrence) (citing State Farm Fire & Cas. Co. v. CTC Dev. Corp. , 720 So.2d 1072, 1076 (Fla. 1998) ). Actual knowledge of current or past abuse of an employee precludes finding an accident because the knowledge creates a future expectation for injury. State Farm Fire & Cas. Co. v. Compupay, Inc. , 654 So.2d 944, 947 (Fla. 3d Dist. Ct. App. 1995) ("Thus, because we find that [the third party's] acts were intentional, and because [Defendant] was aware of [the third party's] history of sexual harassment activities, the definition of occurrence is not met and there can be no coverage under the bodily injury policy provisions."). But hiring without such knowledge may support a finding of an accident, because the injury was neither expected nor intended from the standpoint of the insured.
Defendant relies heavily on Compupay for the proposition that sexual harassment is always an intentional act and therefore cannot be an "accident." In Compupay , however, the insured employer had knowledge of its employee's past bad behavior. Compupay , 654 So.2d at 947. Here, it is not alleged that CSOA had actual knowledge of any unsavory prior behavior from Mourao. Rather, Plaintiff's Underlying Complaint is replete with allegations that CSOA knew or should have known the danger Mourao presented. [ECF 48 at 8]; see also [ECF No. 42-7 at ¶ 5 (noting one of the effects of default judgment is that "all" well-pleaded allegations of fact are admitted]. Because this case came before the Court on a Final Default Judgment, all allegations in the Underlying Complaint are accepted as true. United Techs. Corp. v. Mazer , 556 F.3d 1260, 1273 (11th Cir. 2009) (" Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims."); Tyco Fire & Sec., LLC v. Alcocer , 218 F. App'x 860, 863 (11th Cir. 2007) ("While "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover," a defaulted defendant is deemed to "admit[ ] the plaintiff's well-pleaded allegations of fact."). Thus, both potential factual scenarios-that CSOA did know or that it did not know but should have known -are accepted as true. Accordingly, because the standard requires actual knowledge of current or past abuse, the Underlying Complaint does not support a sole finding that CSOA expected or intended the harassment. As a result, Plaintiff's bodily injury arising out of CSOA's negligent hiring, supervision, training, and retention of Mourao constitutes an occurrence.[3]
*1366 2. The Abuse or Molestation Exclusion
The insurance policy contains an "abuse or molestation exclusion," which effectively releases Defendant from coverage if its insured sexually assaults anyone in the insured's "care custody or control." Both parties agree that Doe's rape constitutes "abuse or molestation." At issue is whether the abuse occurred when she was under the "care, custody, or control" of CSOA and Mourao.
Defendant argues that CSOA and Mourao had "care, custody, or control" of Plaintiff because: (1) Plaintiff alleged that both CSOA and Mourao owed her a duty to protect and care for her safety, and (2) Mourao was acting in the course and scope of his employment at the time of the assault. In support of this, Defendant cites a series of cases discussing materially similar abuse or molestation exclusions, where children were placed in the custody of a caregiver other than their parents, were abused, and subsequently were found to be outside the scope of relevant insurance provisions. E.g., Am. Empire Surplus Lines Ins. Co. v. Chabad House of N. Dade, Inc. , 771 F.Supp.2d 1336, 1340-41 (S.D. Fla. 2011) ; Dueno v. Modern USA Ins. Co. , 152 So.3d 60, 62-63 (Fla. 5th Dist. Ct. App. 2014) ; Valero v. Fla. Ins. Guar. Ass'n Inc. , 59 So.3d 1166, 1167 (Fla. 4th Dist. Ct. App. 2011). Defendant also cites several cases concerning imputing an employee's negligence to its employer, presumably in support of an argument that the insurance policies exclude coverage for "the negligent ... employment ... investigation ... or retention" of an employee whose conduct would be excluded. [ECF No. 48 at 13].
Plaintiff argues that this exclusion does not apply because she was not in the "care, custody, or control" of CSOA or Mourao at the time of the incident for two reasons: (1) the excursion ended when she reached her destination and disembarked the party boat, ending Mourao and CSOA's "care, custody, or control," and (2) that although Mourao's actions originated in the course and scope of his employment during the assault, whether he was acting in the "course and scope of his employment" is legally different from whether she was in his "care, custody, or control." [ECF No. 48 at 12-13].
"Care, custody, or control" is a phrase frequently used in insurance contracts. Shankle v. VIP Lounge, Inc. , 468 So.2d 548, 549 (Fla. 5th Dist. Ct. App. 1985). But because it is not defined in the insurance policies issued to CSOA, the Court must determine its meaning. State Farm Mut. Auto. Ins. Co. v. Fischer , 16 So.3d 1028, 1032 (Fla. 2d Dist. Ct. App. 2009) ("[w]hen the insurer has not defined a term, the common definition of the term should prevail") (citing Auto-Owners Ins. Co. v. Above All Roofing, LLC , 924 So.2d 842 (Fla. 2d Dist. Ct. App. 2006) ).
"Care" refers to the "conduct" or "function" of a party with obligations towards *1367 another. Care , MERIAM-WEBSTER DICTIONARY ("Webster's"), https://www.merriam-webster.com/dictionary/care (last visited September 20, 2018); see also Care , BLACK'S LAW DICTIONARY (10th Ed. 2014). "Custody," refers to "guarding" or "control" of a person for specific purposes. Custody , Webster's, https://www.merriam-webster.com/dictionary/custody (last visited September 20, 2018); see also Custody , BLACK'S LAW DICTIONARY (10th Ed. 2014). And finally, "control" refers to "power" or "influence" over another. Control , Webster's, https://www.merriam-webster.com/dictionary/custody (last visited September 20, 2018); see also Control , BLACK'S LAW DICTIONARY (10th Ed. 2014). The parties here do not dispute these definitions, only how they apply.
The parties agree that Plaintiff is an adult woman who went on a cruise excursion. Mourao, a staff member of the cruise excursion and her assailant, guided her to the bathroom at her request, where he then assaulted her. And the Underlying Complaint, whose facts are accepted as true, alleges that "at all relevant times, Mourao was acting within the course and scope of his employment and/or exercising his duties as a member of the CSA crew[,]" and that the sexual assault happened "during" the excursion. [ECF No. 42-1 ¶¶ 26, 47, 48]. This fact was key to obtaining a judgment against CSOA in the underlying action, as opposed to judgment only against Mourao. [Id. ¶¶ 38-40, 45-54, 57-63, 66-75, 78-85]. Plaintiff cannot change her position on this key fact now.
The Court finds that the admitted allegations in the Underlying Complaint establish that the Abuse or Molestation exclusion eliminates coverage. All of the underlying claims either involved abuse or molestation or are deemed to have arose out of the abuse or molestation of Plaintiff. See Chabad House , 771 F.Supp.2d at 1340-41. The allegations also establish that Plaintiff was still in the custody or control of Mourao and CSOA at the time of the assault. Plaintiff alleges the assault occurred during the excursion where Mourao was both acting in the scope of his employment and had a duty to protect and care for Plaintiff's safety. Although he breached this duty, that does not change the nature of their relationship: Plaintiff was still in his "care, custody, or control" when he guided her to the bathroom at her request, then locked the door, and detained her so she could not leave. Given the scope and context of the "case, custody, or control" provision, and the context of the insurance policy, the facts are sufficient to show that Plaintiff was in the care of Mourao and CSOA at the time of her assault.
C. Defendant's Counterclaim
Defendant's counterclaim seeks a declaratory order that Defendant "has no duty to indemnify Jane Doe for the default judgment" against CSOA and Mourao under either of the two policies. Plaintiff asserted four affirmative defenses, but conceded her fourth affirmative defense in her pleadings, and has also agreed that her third affirmative defense only applies if the Court rules that coverage exists. The policies are materially and functionally similar, and the Court has found for the Defendant on the pertinent issues. Thus, Plaintiff's remaining defenses are rendered moot.
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [ECCF No. 45] is GRANTED . It is further ordered that:
*1368 (1) Defendant's Counterclaim for Declaratory Relief [ECF No. 30] is GRANTED;
(2) This case shall be administratively closed.
DONE AND ORDERED in Chambers at Miami, Florida, this 22nd day of October, 2018.

Defendant also challenges Plaintiff's standing to bring suit, arguing that Plaintiff has no standing to assert her claims because she has no legally protected interest in Defendant's duty to indemnify its insureds. Standing is a jurisdictional issue, and the Court must consider it before reaching any questions on the merits. Dillard v. Baldwin County Comm'rs , 225 F.3d 1271, 1275 (11th Cir. 2000) (citing Steel Co. v. Citizens for a Better Env't , 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ). Plaintiff won a Final Default Judgment against Defendant's insureds, and as such, has standing to bring claims to recover damages. See VanBibber v. Hartford Accident & Indem. Ins. Co., 439 So.2d 880, 882-83 (Fla. 1983) (recognizing the ability of an injured person to bring claims as a third-party beneficiary against the tortfeasor's insurance company after obtaining a judgment against the tortfeasor); see also Fla. Stat. Ann. § 627.4136(1) ("It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.").

Defendant argues that the assault was not an accident because it was intentional conduct by Mourao, and intentional actions are not accidents. See Allstate Ins. Co. v. McCranie , 716 F.Supp. 1440, 1446 (S.D. Fla. 1989) (denying coverage because sexual molestation of child was not an "accident"). Plaintiff does not dispute this. But this is not dispositive because, as discussed here, established Florida law takes a broader view of what constitutes an "accident" or "occurrence" for the purposes of an insurance policy.

Defendant also argues that Plaintiff failed to timely or properly assert claims for medical payment coverage. Plaintiff counters that Defendant was on notice of the claim as early as five months following the accident, and that Defendant's failure to timely provide the policies for Plaintiff's review precluded reporting the expenses within the time limitations. The insurance policy does not specify how claims must be reported. The only clear guidance from the policy is that the medical payments claim must have been "reported" within a year of the accident. And here, no such report or claim for medical payments occurred during that timeframe.