[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12851

Non-Argument Calendar

_____

PETER MEYER,

                                                   Plaintiff-Appellant,

*versus*

GWINNETT COUNTY POLICE DEPARTMENT, et al.,

                                                   Defendants,

GWINNETT COUNTY,
JENNIFER ROBERTS,
Individually and in her official capacity as a,
Gwinnett County Police Officer,
KIRK BASONE,

2                    Opinion of the Court                    21-12851

LA PETITTE ACADEMY, INC.,

                                                    Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:14-cv-00066-ELR

———————————————

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

This is the third appeal we have heard in this case, which stems from Plaintiff Peter Meyer's arrest and detention on charges of sexually abusing a family friend's five-year-old daughter. Meyer was detained for 20 months before the charges were dropped. He filed this lawsuit in 2014, over two years after his release, asserting federal and state-law claims against the entities and individuals involved in his arrest and detention. Because his lawsuit was admittedly not timely filed, Meyer sought the benefit of a provision of Georgia law that permits tolling of the statute of limitations during periods of mental incapacity. *See* O.C.G.A. §§ 9-3-90(a), 9-3-91. He alleged that, because of the traumatic experiences he suffered in jail, he was so unsound of mind upon his release that he was unable to carry on his ordinary life affairs.

More than eight years have passed since the complaint was filed, but we are still stuck on issues related to tolling. In the first two appeals, we reversed orders granting a motion to dismiss and a motion for summary judgment, respectively, regarding whether Meyer could establish tolling for mental incapacity. *Meyer v. Gwinnett Cnty. ("Meyer I")*, 636 F. App'x 487, 489–90 (11th Cir. 2016); *Meyer v. Gwinnett Cnty. ("Meyer II")*, 716 F. App'x 857, 865–66 (11th Cir. 2017). We held in the second appeal that a genuine factual dispute existed as to "whether Meyer suffered mental incapacity sufficient to toll the statute of limitations during the three-week period following his release from jail," which would make his complaint timely if resolved in his favor. *Meyer II*, 716 F. App'x at 866. On remand, the district court held a trial on the tolling issue, and a jury returned a verdict in Meyer's favor in July 2019, meaning the case could finally proceed to the merits.

But the case was derailed again when, during merits discovery, Meyer's attorney disclosed for the first time a November 2017 email from Meyer in which he expressed displeasure at being "made to look crazy and incompetent in order to toll the statute of limitations" simply because "the lawsuit wasn't file[d] in time." The defendants filed a motion for sanctions, asserting that the email showed Meyer's claim of mental incapacity was fraudulent. The district court rejected Meyer's claim that the email was privileged, and it agreed with the defendants that sanctions were appropriate. Finding that Meyer's counsel had engaged in bad-faith conduct by flagrantly disregarding his discovery obligations and

making knowingly false or egregiously reckless misrepresentations about the existence of evidence relevant to his tolling claim, the court dismissed the case.

Courts are generally reluctant to impose the harsh sanction of dismissal with prejudice where the plaintiff is not actually culpable, but the record here supports the district court's finding that counsel's conduct rose to the level of bad faith or willful contempt. We also cannot say that the court abused its discretion in concluding that lesser sanctions would not suffice. We affirm.

## I. Procedural History

We begin with the lengthy procedural history of this case to provide context for the arguments on appeal.

### A. *Complaint, Motion to Dismiss, and First Appeal*

In January 2014, Meyer filed a lawsuit against Gwinnett County, the Gwinnett County Police Department, Officer Jennifer Roberts, Kirk Basone, La Petite Academy, Inc., and Virginia Kirkpatrick, arising out of his arrest and 20-month detention on charges of aggravated sexual battery and child molestation. In the operative second amended complaint, he sought damages for malicious prosecution, false imprisonment, and deprivation of civil rights under 42 U.S.C. § 1983.[1]

---

[1] Meyer also brought a claim for defamation, but in the second appeal, he abandoned any challenge to the dismissal of this claim. *See Meyer II*, 716 F. App'x at 859 n.1.

Meyer conceded that his claims were untimely and invoked a Georgia statute that permits tolling of the statute of limitations during periods of mental incapacity. *See* O.C.G.A. §§ 9-3-90(a), 9-3-91. He alleged that incarceration caused him such severe mental and emotional distress that he was unable to carry on his ordinary life affairs after his release. In support, he filed an affidavit from Dr. Nancy Aldridge, a psychotherapist and Licensed Clinical Social Worker who began seeing him as a patient in July 2012. Dr. Aldridge described experiences relayed by Meyer during treatment and stated that he suffered from post-traumatic stress disorder ("PTSD").

In January 2015, the district court found that Meyer's allegations were insufficient to establish mental incapacity and granted the defendants' motions to dismiss the action as time barred. Meyer then moved for reconsideration and submitted additional evidence, including another affidavit from Dr. Aldridge. The court denied the motion, and Meyer appealed. We reversed in February 2016, concluding that dismissal was improper because tolling could not be resolved on the face of the complaint. *Meyer I*, 636 F. App'x at 489–90.

## B. Motion for Summary Judgment and Second Appeal

On remand, the district court permitted discovery to go forward limited to the issue of whether Meyer was entitled to tolling for mental incapacity. Following discovery, the defendants moved for summary judgment. Meyer opposed the motion, contending in part that he was mentally incapacitated for at least a three-week

period following his release.  For support, he submitted a third af-fidavit from Dr. Aldridge, among other evidence, which described how Meyer developed "Complex [PTSD]" during his detention and how, in her view, Meyer lacked the capacity to initiate his own behavior and the judgment to make his own decisions upon his re-lease.  A more complete discussion of Meyer's evidence is pre-sented in *Meyer II. See* 716 F. App'x at 862–64.

The district court granted summary judgment, concluding that Meyer was not entitled to tolling of the statute of limitations. But in November 2017, we again reversed, holding that a genuine triable issue existed "as to whether Meyer suffered mental incapac-ity sufficient to toll the statute of limitations during the three-week period following his release from jail," which would render his complaint timely if resolved in his favor.  *Id.* at 866.

## C.  *Pretrial Conference*

Back on remand, the case was reassigned to a different dis-trict-court judge, who set the trial on the issue of tolling for July 15, 2019, and held a pretrial conference on July 8, 2019.  Because this conference was critical to the court's later sanctions order, we re-count the facts in some detail.

At the pretrial conference, the district court questioned Meyer's attorney, Thomas Reynolds, about the capacity in which Dr. Aldridge was expected to testify at trial—whether as an expert witness, a treating witness, or both—and whether he had fully complied with his discovery obligations.  After some back-and-

forth with the district court, Reynolds said he intended to call Dr. Aldridge as "both" a traditional expert witness and as a treating expert witness and that he believed he had "provided everything that [he] needed to provide under Rule 26."

The district court turned to the question of "what was provided with respect to Dr. Aldridge." A defense attorney advised that Reynolds had provided Dr. Aldridge's CV, her previously filed affidavits, and two billing invoices, but no records of her treatment of Meyer. The attorney also suggested that Dr. Aldridge's testimony was not relevant because she did not treat him during the three-week period at issue, but the court was not persuaded that her testimony should be excluded on that ground. The court then turned to Reynolds:

> THE COURT: And let me understand, . . . your position is, she treated Mr. Meyer before that three-week period and also some seven months later. She did not treat him during the three-week period. Is that correct?
>
> MR. REYNOLDS: That's correct. She treated him before, is my understanding, and she treated him afterwards.[2]

---

[2] Dr. Aldridge's affidavits reflect that she became aware of Meyer's situation in October 2011 but did not begin treating him until June 2012.

8                    Opinion of the Court                    21-12851

THE COURT: And so have you provided them with treatment records of —

MR. REYNOLDS: I don't think she had treatment records that we were to provide them [sic]. We did provide them with her notes from her billing during the time period.

[. . . .]

THE COURT: *And so she has no treatment records, you're saying.*

MR. REYNOLDS: *That's correct.* We don't intend to introduce any treatment records from her at trial.

THE COURT: But she would offer live testimony in terms of her treatment.

MR. REYNOLDS: That's correct, your honor.

The court questioned how the defendants could rebut any of her testimony about treatment if they lacked her records. Reynolds replied that her affidavits and opinions were sufficient.

The district court then asked Reynolds about the kind of testimony Dr. Aldridge would provide as it relates to treatment. Reynolds advised that her testimony would cover Meyer's repressed memories, memory problems, his inability to take on new tasks, and the medical condition—complex PTSD—she had diagnosed. This conversation ensued:

> THE COURT: [Dr. Aldridge] is going to talk about certain appointments she had with him and what the appointments consisted of and what she may have prescribed to him and what course of action she directed him to take. I mean, those are . . . the kinds of treatment documents that usually come to trial. So do we have any of those, just for treatment?

> MR. REYNOLDS: No, not for treatment. She has—again, *I don't think she has notes for those sessions with him is my understanding.* I don't have copies of any of those notes from her sessions.

> THE COURT: Well, how could you use her as a treating physician then?

Reynolds suggested that, if the defendants "wanted to find out more about her, they could have deposed her." The court replied, "That's not how Rule 26 works, though," and said it was still unclear about Dr. Aldridge's witness status. It expressed concern that it had "never seen a case where we have a treating physician and we don't have any records, none that were provided, none that were even created." A defense attorney echoed the point, to which Reynolds replied, "If she has some, I don't have a copy of them. I can tell you that." The district court explained that, as the counsel for plaintiff with the burden of proof, it was his obligation "to find out if they exist" and "to provide them if they exist."

*D. Trial*

The three-day trial on the issue of tolling began one week later on July 15, 2019. When Dr. Aldridge appeared for trial on the third day, she came with a subset of her records for Meyer in response to a subpoena from the defendants. And she revealed that, contrary to Reynolds's prior statements, she possessed volumes of records for Meyer.

The district court asked Reynolds to respond to what was, in the court's view, a "major discovery violation." At first, Reynolds suggested that the treatment records were not a big deal because they did not concern the three-week period in question and were protected from disclosure by a mental-health privilege. In response, the court asked how Dr. Aldridge could testify about her treatment of Meyer if the privilege had not been waived. Reynolds replied that he had inadvertently created "confusion" when he "misspoke" at the pretrial conference, and that Meyer intended to "call her as an expert witness, not as a treating" witness. The court had a "couple things" to say in response, telling Reynolds,

> First of all, I made it perfectly clear and I asked several times whether she was being brought as an expert or a treating doctor. Because Rule 26 makes it clear that there is a breakdown.
>
> Second, . . . as you stand here and you're saying, "I don't even have the records," you think that's okay. And it's not. You're plaintiff's counsel. This is a trial about plaintiff's mental competency. And to say, "we want to go forward in this trial, we don't

want to waive the privilege, and that's why I didn't bother to make sure that we had them and provided them," makes no sense whatsoever to me.  And so I'm really not sure . . . I even understand your arguments.

[. . . .]

But just so that I understand, it is your position now that, contrary to what you said in response to my questions—I asked several times during the pretrial conference—you intend to use . . . Dr. Aldridge . . . as an expert but not as a treating doctor, is that correct.

Reynolds said that it was.

After hearing argument from the defendants, the district court pressed Reynolds on how he could "be prepared for today's trial and you don't even know what kind of witness Dr. Aldridge would serve as."  Again, Reynolds claimed that he "just misspoke" at the pretrial conference, but the court was unmoved, observing that it had "asked several times and you gave explanations several times. It wasn't just an oversight."  The court noted that Reynolds failed to bring any mistake to the court's attention.  It also observed that his opening statement to the jury referenced Dr. Aldridge's treatment of Reynolds.  The court admonished Reynolds that the matter was not "just a simple mistake or that you misspoke," but instead was a "serious issue" involving the violation of his

discovery obligations based on his own statements that Dr. Aldridge's testimony would cover her treatment of Meyer. Ultimately, the district court decided to exclude Dr. Aldridge as a witness altogether for this "highly unfair" discovery violation.

The district court then questioned Dr. Aldridge about the contents of her records. In relevant part, Dr. Aldridge stated that Reynolds had requested her records back in 2018, and she indicated to him that the records existed but were "voluminous" and would take time to provide, and "then that was kind of it." She did not produce them at that time. In response, the defendants requested dismissal of the case as a sanction for Reynolds misrepresenting that the treatment records did not exist. The court denied the "drastic remedy" of dismissal at that time, noting that the defendants could have raised the issue at an earlier point in the case.

The jury returned a unanimous verdict in Meyer's favor on the tolling question, and the court denied the defendants' motions for judgment as a matter of law. As a result, the district court determined that Meyer's claims could, at last, proceed to discovery on the merits.

E. *Merits Discovery and Motion for Sanctions*

Merits discovery commenced in November 2019. The parties scheduled a deposition of Dr. Aldridge and agreed that Meyer would produce relevant documents to the defendants by July 8, 2020. Meyer produced approximately 1,300 pages of documents on July 8, as well as supplemental documents later on July 9.

21-12851                Opinion of the Court                13

The supplemental documents contained an email dated November 5, 2017, from Meyer to Reynolds, Dr. Aldridge, and a psychiatrist who was treating him. Near the middle of this lengthy, rambling, and erratic email, which touched on legal, medical, and personal issues, Meyer wrote,

> I played along with the Game up until you all tried to make me a mental case. Thats bullshit. The Only reason we are having to make this claim and fight this fight is because the lawsuit wasnt filed in time.

> So Peter has to be made to look crazy and incompetent in order to toll the statute of limitations.

[sic]. Also produced was an email dated July 29, 2018, from Dr. Aldridge to Reynolds, in which Dr. Aldridge informed Reynolds that "Mr. Meyer's file covers several years and at least 3 storage boxes of clinical notes and documents."

The defendants moved for sanctions, arguing that these documents showed Meyer's claim of mental incapacity was in bad faith and that Reynolds misled the court and the parties about the existence of Dr. Aldridge's treatment records. They requested the sanction of dismissal with prejudice or, alternatively, relief from the trial verdict.

Meyer responded that sanctions were not warranted. He made several arguments: (1) the defendants failed to exercise due diligence in obtaining the documents; (2) the court already dealt with these issues at trial; (3) the email was protected by the

attorney-client privilege and inadvertently produced; and (4) the email, far from showing a plot to conduct a fraud on the court, actually depicted a man with severe mental-health issues communicating in a "fragmented and largely irrational manner." An attached affidavit from Todd Antin, who had diagnosed Meyer with bipolar disorder and complex PTSD and treated him for those conditions since March 2019, described in general terms the "recurrent periods of psychosis" and irrational behavior experienced by those with bipolar disorder.

The district court held a sanctions hearing on March 4, 2021. After questioning the defendants about their diligence in seeking the treatment records before trial, the court turned to Reynolds to discuss "serious misrepresentations" he had made about the existence of Dr. Aldridge's treatment records at the pretrial conference. While Reynolds admitted he likely knew she had more records "in general" or "as a whole," he claimed he was mistakenly referring to the three-week period under dispute, and that he "never received anything from" Dr. Aldridge despite repeated requests, so he was unaware of the contents of her records. The court observed that the discussion about treatment records was not limited "to any specific period," that it had repeatedly asked "clear and specific questions" about the existence of the records at the pretrial conference, and that it was Reynolds's duty, as the plaintiffs' attorney, to find the records and provide them. Reynolds continued to minimize his conduct, quibbling that the court may have

misunderstood him or misremembered what he said. The court took the matter under advisement.

## F. Dismissal with Prejudice as Sanction

On March 22, 2021, the district court entered an order dismissing Meyer's lawsuit with prejudice as a sanction under Rules 37(b) and 41(b) of the Federal Rules of Civil Procedure and the court's inherent power.

The district court first concluded that the November 2017 email was not covered by the attorney-client privilege. The court noted that the email was primarily directed to Dr. Aldridge and that, in the sections addressing Reynolds, Meyer did not appear to be "seeking legal advice," which was "fatal" to his argument. The court further found that, even assuming the email was privileged, Meyer waived attorney-client privilege with regard to "communications about his state of mind" by putting his mental state and Dr. Aldridge's opinions at issue. The email therefore was, in the court's view, discoverable.

Next, the district court found that Reynolds's "clear record of failure to comply with his discovery obligations and repeated misrepresentations to the Court demonstrate bad faith and willful contempt." The court observed that counsel's failure to comply with discovery obligations led to concealment of important evidence, specifically the November 2017 email. It further noted that Reynolds had made repeated misrepresentations to the court about the existence of Dr. Aldridge's records. It found that he knew Dr.

Aldridge had at least three boxes of such records in July 2018, a year before the pretrial conference. So according to the court, when Reynolds claimed repeatedly that he was unaware of those records, "he either made knowingly false statements or his statements were egregiously reckless," which amounted to bad faith and willful contempt. The court was "unconvinc[ed]" that Reynolds's statements could be attributed to "confusion, lack of preparation, or misunderstanding."

Finally, the district court concluded that lesser sanctions than dismissal with prejudice would not suffice. The court rejected Meyer's argument that he had already been sanctioned for this conduct through the exclusion of Dr. Aldridge as a witness at trial. The court explained that exclusion remedied one harm stemming from Reynolds's discovery violations: "the unfairness of allowing a witness to testify when Defendants were unprepared (due to Plaintiff's discovery violations)." But in the court's view, it did not remedy the additional harm stemming from the concealment of key evidence relevant to tolling.

While the district court declined to speculate on the veracity of Meyer's assertions in the email or whether the email would have changed the outcome of the trial, it found that Reynolds's failure to comply with discovery obligations impeded the case and prejudiced the defendants. That prejudice, the court stated, included both the harm to their trial defense and the substantial and "unjustified delay" in the case. And it concluded that Reynolds's "failure to disclose evidence that should have been disclosed before trial—

which could have been addressed years ago—cannot be cured by any other sanction aside from dismissal with prejudice." Accordingly, the district court dismissed the case with prejudice and denied defendants' other requests for relief.

Meyer filed a motion for reconsideration, arguing that the district court manifestly erred in concluding that the November 2017 email was discoverable. He also said that the record was devoid of evidence of bad faith, that Meyer personally was not at fault, and that lesser sanctions, such as ordering a new trial, would have been appropriate. The district court denied the motion, and this appeal followed.

## II. Attorney-Client Privilege

We begin our review with the question of whether Meyer's November 2017 email was shielded from discovery by the attorney-client privilege. Because this issue involves a mixed question of law and fact, we review *de novo* the district court's decision whether the attorney-client privilege applies. *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995, 997 (11th Cir. 1992).

The parties dispute whether state or federal privilege law applies. Ordinarily, "a claim of privilege in federal court is resolved by federal common law," unless the privilege is invoked with respect to a claim or defense under state law in a civil case, in which event state privilege law applies. *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992); *see* Fed. R. Evid. 501. But "where the court's jurisdiction is premised upon a federal question," the federal law of

privilege "provides the rule of decision" even if the evidence is "relevant to a pendent state law count which may be controlled by a contrary state law of privilege." *Hancock*, 967 F.2d at 467 (noting that it "would be impractical to apply two different rules of privilege to the same evidence before a single jury"). Because jurisdiction in this case was based on Meyer's federal § 1983 claim, the federal law of privilege applies to the supplemental state law counts as well. *See id.*

Next, we assume without deciding that Meyer's November 2017 email was subject to the attorney-client privilege. The privilege protects "disclosures made by a client to his attorney, in confidence, for the purpose of securing legal advice or assistance." *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1248 (11th Cir. 2020); *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1334 (11th Cir. 2018). In the email, Meyer addressed both his mental health and various legal matters, although it's not clear he sought or expected a response. We decline to resolve whether the privilege applies to the email or portions of the email and instead assume that it does for the purposes of this case.

That leaves the issue of waiver. The district court found that, even assuming the email was privileged, Meyer waived attorney-client privilege with regard to "communications about his state of mind" by putting his mental state and Dr. Aldridge's opinions at issue. Meyer responds that merely putting his mental health

21-12851                Opinion of the Court                19

at issue did not waive the privilege, and that the court failed to consider that Dr. Aldridge was excluded as a trial witness.[3]

"The attorney-client privilege belongs solely to the client, who may waive it either expressly or by implication." *Knox*, 957 F.3d at 1248 (quotation marks omitted). Waiver by implication can occur where a party "injects into the case an issue that in fairness requires an examination of otherwise protected communications" to prevent prejudice to the other party. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir. 1994), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994). And "once waived, the attorney-client privilege cannot be reasserted." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987). We also note that, despite its importance, "the privilege is not a favored evidentiary concept in the law since it serves to obscure the truth, and it should be construed as narrowly as is consistent with its purpose." *Id.*

Here, Meyer injected into the case an issue regarding his mental capacity during a three-week period following his release from jail in 2012. What's more, to support that claim he relied heavily on Dr. Aldridge's opinions, which were formed based on communications with Meyer after that period. As a result, fairness required an examination of what might otherwise be protected

---

[3] Contrary to Meyer's suggestion, the fact that he suffers from bipolar disorder and complex PTSD does not, standing alone, show that he lacks the mental capacity necessary to waive rights and privileges. And in our view, Dr. Antin's affidavit does not affect the analysis of the waiver issue, so any error the district court committed in failing to consider the affidavit is harmless.

communications about his mental health with Dr. Aldridge. *See Cox*, 17 F.3d at 1419. So whether the email was protected by the attorney-client privilege or the psychotherapist-patient privilege, or both, Meyer waived the confidential nature of the email when he made Dr. Aldridge's opinions central to his claim of mental incapacity for purposes of tolling the statute of limitations.

The Georgia case law Meyer cites is not to the contrary, even if it were binding. In *Neuman v. State*, 773 S.E.2d 716 (Ga. 2015), the Georgia Supreme Court held that putting mental health at issue in a case does not necessarily waive the attorney-client privilege for expert communications related to that issue. *Id.* at 719–20. The court held that the privilege can apply to confidential communications "between the attorneys, their agents, or their client, and an expert engaged by the attorney to aid in the client's representation." *Id.* at 720. And it explained that "the privilege is not waived if the expert will neither serve as a witness at trial nor provide any basis for the formulation of other experts' trial testimony." *Id.* But importantly, "the cloak of privilege" does not cover correspondence with a testifying expert. *Id.*

Dr. Aldridge does not fall into the category of non-testifying experts described in *Neuman*.[4] Meyer clearly intended for Dr. Aldridge to "serve as a witness at trial" to support his claim of mental

---

[4] We note that *Neuman*'s "judicially created exclusionary rule" has since been "statutorily abrogated" by the enactment of a new Evidence Code. *Volkova v. State*, 855 S.E.2d 616, 622 (Ga. 2021).

incapacity and to testify about her treatment of Meyer. That intent is reflected in the summary-judgment briefing, Dr. Aldridge's affidavits, Reynolds's statements to the court and opposing counsel leading up to the trial, and Reynolds's opening statement at trial. That she ultimately did not testify is beside the point. Dr. Aldridge did not testify because she was excluded as a sanction for Meyer's failure to disclose her records and communications, not because Meyer made a voluntary choice not to present her testimony.

For these reasons, the district court did not err in concluding that the November 2017 email was discoverable.

### III. Sanctions

Meyer next argues that the district court abused its discretion because the standards for the sanction of dismissal with prejudice were not met and the court failed to consider lesser sanctions.

We review for abuse of discretion the dismissal of an action as a sanction. *Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374 (11th Cir. 1999); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005).

Under Rule 37, the district court has broad authority to control discovery, including dismissal as the most severe sanction. *See* Fed. R. Civ. P. 37(b)(2)(C); *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th

Cir. 1993). Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and ensure the integrity of the discovery process. *Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982); *see also Wouters v. Martin Cnty., Fla.*, 9 F.3d 924, 933 (11th Cir. 1993). Rule 41(b) authorizes a district court to dismiss a complaint for failure to prosecute or failure to comply with a court order or the federal rules. *Gratton*, 178 F.3d at 1374. Finally, the court retains discretion to impose sanctions under its inherent powers to control the proceedings before it, including dismissal with prejudice. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir. 1993); *Mingo v. Sugar Cane Growers Co-op. of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989).

The sanction of dismissal with prejudice is an extreme and disfavored remedy. *Phipps*, 8 F.3d at 790; *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988). It ordinarily may be imposed only when (1) the party's conduct demonstrates bad faith or willful contempt, and (2) lesser sanctions would not suffice. *Betty K Agencies*, 432 F.3d at 1337–38 (addressing Rule 41(b) and inherent powers); *Malautea*, 987 F.2d at 1542 (stating that "simple negligence" or "misunderstanding" will not justify dismissal under Rule 37).

"The key to unlocking a court's inherent power is a finding of bad faith." *Barnes*, 158 F.3d at 1214. Bad faith in this context refers to "subjective intent." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224 (11th Cir. 2017). Reckless conduct alone is not enough. *Id.* at 1225; *see also Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). Still, subjective bad faith can be

inferred "if an attorney's conduct is so egregious that it could only be committed in bad faith." *Purchasing Power*, 851 F.3d at 1224–25.

While courts should usually be more reluctant to impose the "harsh sanction of dismissal with prejudice" where the plaintiff is not actually culpable, dismissal may be appropriate "where any other sanction would fail to cure the harm that the attorney's misconduct would cause to the defendant." *Gratton*, 178 F.3d at 1374; *see also Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985). And "[h]owever severe the sanctions . . . , we will not interfere unless important historical findings are clearly erroneous or . . . there has been an abuse of discretion." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (quotation marks omitted).

A. *Bad Faith or Willful Contempt*

Meyer offers various reasons why, in his view, the record does not support the district court's finding of bad faith or willful contempt. We agree with him to the extent that nothing in the record *compels* a finding of bad faith. But the record reasonably *supports* such a finding. And that is enough to show that the court did not clearly err. *See Malautea*, 987 F.2d at 1543 ("[The court's] factual finding that the defendants violated the discovery orders willfully and in bad faith is not clearly erroneous."); *Eagle Hosp.*, 561 F.3d at 1306 ("The record supports the district court's finding that Gerst acted in bad faith.").

To start, the record confirms that Reynolds failed to comply with his discovery obligations on behalf of Meyer. It is undisputed that he did not provide Dr. Aldridge's treatment records to the defendants before she appeared to testify at trial. While Meyer points out that the defendants never filed a motion to compel and no written order required production of these records, he largely ignores the court's comments at the pretrial conference.

At the pretrial conference, the district court made clear, repeatedly, that if Meyer intended to call Dr. Aldridge as a treating expert at trial, which Reynolds expressly confirmed was Meyer's intent, it was Reynolds's obligation to "to find out if [her treatment records] exist" and "to provide them if they exist." Yet despite that clear command, Reynolds attempted to call Dr. Aldridge as a witness, after referencing her treatment in the opening statement, without either disclosing the existence of her records or providing them to the defendants. And nothing in the record indicates that Reynolds attempted to obtain the records between the pretrial conference and trial; rather, they came to light only because of a subpoena from the defendants. Reynolds, in short, blatantly disobeyed the court's command.

Reynolds also affirmatively misled the district court and the defendants about the existence of the treatment records. At the pretrial conference, Reynolds claimed, among other things, that he did not know whether Dr. Aldridge possessed any treatment records and he believed they did not exist. *See, e.g.*, Doc. 234 at 36 ("I don't think she has notes for those sessions with him is my

understanding."). Based on these comments, the district court reasonably was left with the impression that no treatment records "were even created."

But in an email sent approximately one year before the pretrial conference, Dr. Aldridge informed Reynolds that "Mr. Meyer's file covers several years and at least 3 storage boxes of clinical notes and documents." Dr. Aldridge likewise told the court at trial that Reynolds had requested the records in 2018, and she responded that they were voluminous. Yet he never disclosed his apparent knowledge that the records existed, even if he never possessed them. *See, e.g.*, Doc. 234 at 51 ("If she has some, I don't have a copy of them. I can tell you that."). Thus, the record supports the court's finding that Reynolds made either knowingly or recklessly false comments about Dr. Aldridge's records.

Then, after it came to light at trial that Dr. Aldridge possessed voluminous treatment records and Reynolds knew as much, Reynolds refused to accept responsibility for misleading the court or for failing to follow the court's instructions. Instead, he minimized or distorted his comments, and he blamed Dr. Aldridge for failing to produce her records, the court for misunderstanding him, or the defendants for failing to depose her. Meyer repeats these same arguments on appeal.

But we must conclude that the district court reasonably rejected Meyer's claims of a misunderstanding or mistake as implausible. *See Malautea*, 987 F.2d at 1543 (affirming a finding of bad faith where the defendants offered implausible explanations for

willfully violation the court's discovery orders).  It makes no sense to say that Reynolds, in discussing Dr. Aldridge's treatment records, mistakenly believed they were talking about the three-week period at issue for tolling.  Everyone at the pretrial conference knew Dr. Aldridge did not treat Meyer during that time.  The district court expressly said so several times, and the defendants sought to exclude her testimony for that reason.  Rather, the discussion plainly concerned the records of sessions and correspondence with Meyer on which Dr. Aldridge based her opinions about his mental capacity, which began more than six months after the tolling period at issue.  In that context, Reynolds's comments cannot plausibly be construed to relate to the three-week tolling period.  Nor do we see how the bifurcated nature of the trial—limited solely to the issue of tolling—generated "confusion," as Meyer suggests.  The issue to be decided was clear.

Reynolds also raised frivolous and shifting arguments for not producing the records, multiplying the time spent on this issue.  After the records came to light, Reynolds claimed that they were protected from disclosure by a mental-health privilege.  As the district court observed, though, Meyer plainly waived the privilege by putting his mental capacity and Dr. Aldridge's opinions at issue.  Changing tack, Reynolds then claimed that, despite his prior contrary statements at the pretrial conference, Meyer intended to call Dr. Aldridge as a traditional expert witness only, not as a treating expert.  That claim is difficult to reconcile with the record, though,

21-12851                Opinion of the Court                27

which makes clear that Meyer intended for Dr. Aldridge's testimony to cover her treatment of Reynolds.

We are mindful that reckless conduct or statements alone are not enough to demonstrate subjective bad faith. *See Purchasing Power*, 851 F.3d at 1224. And the incidents we have described above, each viewed in isolation, may suggest simple misunderstanding, negligence, or recklessness, which are not enough.

But the district court was permitted to consider counsel's "pattern of conduct." *Jones v. Graham*, 709 F.2d 1457, 1462 (11th Cir. 1983). And that conduct included making knowing or recklessly false statements about the existence of discoverable evidence, flagrantly disobeying the court's command to obtain and produce that evidence for trial, if it existed, and offering implausible, frivolous, or shifting arguments and excuses for not complying with the court's clear instructions, which ultimately undermined the fairness of the trial, as we explain below. On the whole, the record supports the district court's finding that this conduct rose to the level of bad faith and willful contempt sufficient to warrant the imposition of sanctions.[5]

B. *Lesser Sanctions*

---

[5] Because we conclude that the district court's finding of bad faith would meet any of the standards we have described above—whether under Rule 37(b), Rule 41(b), or the court's inherent powers—we need not identify with greater precision which source of authority best applies to the circumstances here.

Finally, we turn to the question of whether the district court's choice of sanction—dismissal with prejudice—was an unjust punishment or otherwise an abuse of discretion. *See Eagle Hosp.*, 561 F.3d at 1306; *Malautea*, 987 F.2d at 1543. "While our review is sharply limited to search for an abuse of discretion and determination that the trial court's findings are supported by the record, we will find abuse of discretion if less drastic sanctions would suffice." *Wouters*, 9 F.3d at 934. "[B]ut where any other sanction would fail to cure the harm that the attorney's misconduct would cause to the defendant, dismissal may be appropriate." *Gratton*, 178 F.3d at 1374.

Here, the district court did not abuse its discretion in concluding that lesser sanctions would be ineffective. The court explained that Reynolds's conduct led directly to the concealment of important evidence casting doubt on whether Meyer's claim of mental incapacity was genuine. Specifically, in a November 2017 email from Meyer to Reynolds and Dr. Aldridge, Meyer complained that "[he] has to be made to look crazy and incompetent in order to toll the statute of limitations" solely "because the lawsuit wasn't filed in time."

As the district court indicated, this evidence was significant enough to undermine the basic fairness of the trial. Meyer suggests that the email merely confirmed his serious mental-health challenges and that the jury likely would have reached the same result. That may or may not be true. But the defendants were entitled to use relevant, discoverable evidence to make their arguments to the

jury that Meyer did not meet Georgia's rigorous legal standard for tolling in situations of mental incapacity. *See, e.g.*, *Martin v. Herrington Mill, LP*, 730 S.E.2d 164, 166 (Ga. Ct. App. 2012). As we noted in the second appeal, there was substantial evidence in the record at summary judgment that Meyer "had the minimal mental capacity necessary to manage his ordinary affairs, however poorly," even though contrary evidence presented a question for the jury to resolve. *Meyer II*, 716 F. App'x at 864. And the email seems to confirm the defendants' essential position—that Meyer's evidence and arguments about the *severity* of his condition during the relevant three-week period were exaggerated to get around the statute of limitations.

The district court reasoned that Reynolds's "failure to disclose evidence that should have been disclosed before trial . . . cannot be cured by any other sanction aside from dismissal with prejudice." Meyer proposes multiple other potential sanctions, but the court did not abuse its discretion in rejecting them, whether it explicitly addressed them or not. *See Phipps*, 8 F.3d at 791 (holding that explicit discussions of lesser sanctions are not required when the court's reasons are "clear enough" from the record). Sanctioning counsel would not cure the harm to the defendants, and Meyer does not explain the "other evidentiary sanctions" he says could have been imposed. Nor can we say that ordering a retrial—with the resulting delays and costs involved—would have been appropriate here. The November 2017 email came to light in June 2020, nearly one year after the trial on tolling in July 2019, and more than

six months after merits discovery began in November 2019.  And additional discovery likely would be required on the tolling issue. "As any further delay would have greatly prejudiced defendants, a lesser sanction than dismissal would not have served the interests of justice." *Goforth*, 766 F.2d at 1535.

Although we are reluctant to affirm a dismissal with prejudice where the plaintiff—who clearly suffered an extremely traumatic experience in jail for crimes he maintains he did not commit—was not actually culpable for any misconduct, we cannot say that the district court abused its discretion by imposing the harsh sanction of dismissal with prejudice based on the conduct of his attorney. *See Gratton*, 178 F.3d at 1374.

For these reasons, we affirm the judgment against Meyer.

**AFFIRMED.**